Number 182263, Steward Holy Family Hospital, Inc. v. Massachusetts Nurses Association. Thank you. Good morning, Mr. Lamond. Good morning, Your Honors. May it please the Court, I'm James Lamond. With me is Allison Zimmern and it's our privilege to represent the Massachusetts Nurses Association in this matter. I hope to address four matters in my time today. First, this is not a Poland Springs paperworker's exception case. Even if we assume the law was as it was first set out in that case, with nothing being changed, this contract lacks the defining and essential characteristics that the Court established for invoking that exception. That is an explicit textual nexus between the misconduct, the listed misconduct, and just cause for discipline. And that was the point of the S.D. Warren contract that allowed Your Honor to say, here's the meeting of the minds of these parties. It couldn't be any more clear that if you do X, that equals just cause. This language doesn't have that nexus. This language sets out a list of behaviors. It sets forth that discharge may be the recommended course of action. It then sets forth the list of considerations that have to take place. But when we get to the end of that incorporated policy, we will not see the words just cause. We will not see the phrase that's necessary to the invoking of that exception. That if you do one of these things, that shall equal just cause for either discipline or discharge. That's the essential requirement of the Poland Spring paperworker's case exception. What we do have in the language is a clear reference to the contract itself. In the incorporated policy, the language says, here's the policy, but to the extent there's a conflict with the collective bargaining agreement, the collective bargaining agreement wins. That is not something that was in the paperworker's exception cases. It's a clear requirement that you say, and I can say it one more time, if you do X, there will be just cause. That's the essential ingredient of the paperworker's exception. So you're using as an example Article 11, Section 5 of this very agreement, which in effect puts certain behavior, in other words, violating the no strike, no lockout context. Yes, Your Honor. We decided that to show that when the party wanted to have a paperworker's exception case, they knew full well how to do so. That's a quintessential example of the paperworker's exception being baked right into the contract language. Is this contract that we're looking at a form contract or is it bespoke? It is not form. It's negotiated between the union and management, and it's renegotiated every three years in a typical way. It may come to include terms that have been borrowed from other collective bargaining agreements, but it is hopefully not something that's pulled off the shelf. The second point I hope to make is that if we take away the paperworker's exception and we take existing law as it is, we look at the plausibility. Was there a plausible path for this arbitrator to reach the result that he did? What about the submission? What's that, Your Honor? The submission. Point number four, Your Honor. I'd like to hear about that as well. Certainly, Your Honor. We think the submission matters. We think that parties practiced in this area know that it is an important starting point for a case. Courts have referred to that or likened it to the pleadings in a case. Like pleadings, parties are free to take defenses that they might have and choose not to make them. We think that the rule in this area is fairly clear. That if I do extend authority for an issue here, was there just cause? And if not, what shall be the remedy? Was there just cause? You're stuck with that. We do think it matters, Your Honor. Did the arbitrator violate that submission in any way? The arbitrator fully exercised the authority given to him under that clause, Your Honor. Assume that were the only starting language for the arbitrator to have applied. What the arbitrator then did, and we see from the award, is to apply the meanings that have historically been given to the term just cause. The entirety of the arbitrator's reasoning is a textbook exercise of just cause being applied. I take it your argument is that even without reaching this issue, it was plausible for the arbitrator to reach the conclusions he did, both as to just cause and as to remedy, and that the submission merely can be viewed as merely reinforcing the conclusion one could reach without the submission. That is the case, Your Honor. Is it important, in your view, that this court come down firmly one way or the other on the role of submissions? You litigate in this field. Is it an issue that comes up a lot? The issue of whether an arbitrator has done something that he wasn't or she wasn't authorized to do, I suppose comes up from time to time, but I do think that practitioners in this field have been told that the issue matters. If there's something that you need decided as to what the contract means on a particular topic, you've got to tee it up. It strikes me it could be a Pyrrhic victory, which is to say if this court says, while these submissions plainly authorized the arbitrator to reach the question of remedy, that you may find labor and management no longer agree on this standard submission, that it gets changed. It will get changed in the cases when a party like Stewart believes, however belatedly, that there is contract language that changes the status quo on the issue of authority to look at employee discipline. But doesn't it depend on, it goes back to the contract. If you've got a question, is there just cause for termination, that has two components. One is, what type of activity is just cause? And the second is, did the person engage in that activity? If you've got a contract that plainly and unambiguously answers the former question, then one would naturally read a submission asking the arbitrator to determine whether there was just cause as a submission to determine whether the person did one of the things that the contract says unambiguously is grounds for judge cause. For example, engaged in a lockout. But if you've got a contract that's ambiguous, then the just cause could be either, and you're off to the races as here. I think if we were litigating a case which involved a language like the strike language, in my experience, an experienced employer lawyer would frame the issue, was there determination permitted by this article of the collective bargaining agreement? That is the sum and substance of what the parties' rights are with respect to discipline there. So do people do that in arbitrations? Do they go in and say, the question we're submitting is whether a person engaged in the activity covered by, listed as just cause for termination? They do, Your Honor. In the case that we've cited in a supplemental letter to the court, because it happens to be a recent decision that addresses the topics that we're here about, the center points decision. In that case, the court recites the issues that the parties had proposed. They had competing issues. The union said one. The employer said the other. The employer did try to parse out the language of what it contended to be limiting language so as to tee up for the arbitrator questions that it thought mattered to the disposing of it. But absent that, Your Honor, there isn't a concern, I would say in our field, that continuing to say was there just cause in some way changes the landscape. If a party believes that they've got an unusual set of contract terms that limit that in some fashion, that is the time to do so. But failing to do that, the parties are entitled to proceed and litigate their case. We know, Your Honor, that the arbitrator noted there were four days of hearing in this case. There were four opportunities for the employer to say, by the way, we have a new argument here. We think that there's something in this contract that changes. This is no longer a traditional standard just cause case. That was an opportunity to do that. We do believe that parties are free to shape their litigation in a way that. . . We're told that this is a standard submission letter commonly used. Is that true? In the area of just cause, it has become common. There are thousands of employee discipline cases probably every year. What's common about it is because most contracts use that as the measuring stick for whether the discipline was contractually permitted. If the contract contains another measuring stick, if somebody believes that it is something other than that, that's the moment, the framing of the issue, to present those disputes for the arbitrator to decide whether the contract does, as the employer says, limit his or her authority or whether it does not because ultimately it's raising a contract question for arbitral disposition. Don't a lot of employers who draft these know that a lot of arbitrators view discharge as the death penalty and they're opposed to the death penalty? So employers who want to be able to have unfettered discretion to discharge know they need to put something in their contracts generally? Yes, Your Honor. Indeed, they need to put something in the contract and the no-strike clause that's in the contract in front of you is that language. With that, my time is up and I thank you, the Court. Mr. Nadarone, good morning. Good morning, Your Honors. May it please the Court, Joshua Nadarone alongside Joseph Ambash for Appellee Steward Holy Family Hospital. This case is the poster child for an arbitrator imposing his own brand of industrial justice, something the Supreme Court cautioned arbitrators from doing more than 60 years ago. Can we agree that if we think this is a plausible construction of the contract, we don't get into that issue? I disagree, Your Honor, because this argument is based on limits on the scope of the arbitrator's authority. If you read MISCO and its progeny, what they are saying is that arbitrators' construction of a contract, as long as it's arguable or plausible... I'm sorry. You just said if it's a plausible construction of the contract by the arbitrator. Nonetheless, the arbitral award can be reversed if... If it is outside the scope of the arbitrator's authority. The Supreme Court has... So from your point of view, the first question we need to answer here is outside of the scope of his authority. That's correct, Your Honor. What imitates his authority? I'm sorry, can you repeat that? What establishes his authority? The arbitration provision of the contract, which is... And what about the submission? The submission does not overwrite expressed limitations on arbitral authority. In fact, this Court actually answered that question. And it's a case that didn't make it into the briefs. Metro Chevrolet v. Union de Trunquistas de Puerto Rico 835F2-3, where the Union made this exact argument. They said, well, even if this isn't an S.D. Warren kind of case, the hospital in that case, the company waived its right by the issue of submission. And this Court made clear that one should be reluctant to conclude that the parties by the general language of the submission to confer broader authority upon the arbitrator than that confined by the collective bargaining agreement. So let's go to the collective bargaining agreement. As I read the agreement you've put in front of us, it says pretty expressly that your employer cannot fire a nurse except for just cause. That's correct, Your Honor. And then I look through and I say, well, if you define just cause to mean something, then an arbitrator can't say it doesn't mean that. But I don't find any definition of just cause in the contract. Your Honor, just cause is not defined in the contract? Well, there you go then. So what the contract does say is that the arbitrator cannot substitute his discretion or judgment for that at the hospital. And I see that, but then there's a clause after that. In other words, I don't think we can read this as saying that that discretion includes firing someone for not having just cause. What it does is it limits the inquiry that just cause means. So here what the arbitrator could have done, he could have said, I don't believe that the grievant committed the acts as charged. He could have said, I think all the hospital's witnesses are lying. He could have found some sort of procedural due process issue in the investigation. But what he cannot do is agree with the hospital on its findings and agree that the grievant herself was unbelievable and untruthful, but then quibble with the result reached by the hospital where that decision is left to the hospital's discretion. So if your reading were correct, then the hospital could fire her because it thought she hadn't washed her car enough before she parked it in the parking lot. And the arbitrator could do nothing about that. The arbitrator would have to determine that that's just cause, even though there's nothing in the contract that would define that as being just cause. But what the parties did is they pre-negotiated a list of penalties that the recommended disciplinary action was immediate termination. There's no option for if the arbitrator concludes that the grievant can... So you're talking about Part 3 of the policies? Yes, Group 3. But this could be in Group 2. But the arbitrator made factual findings consistent with Group 3. And it was consistent with Group 2 as well, wasn't it? I don't believe so, Your Honor. If I've understood you, you've conceded it's a recommended discipline, whether it's Group 3 or... let's take it that it's Group 3. Intimidation is listed under Group 3. But you're putting that together with the clause about the submission... I'm sorry, that nothing in the CBA authorizes him to interfere with the discretion of the employer. Those are the two key components of your argument. Yes, Your Honor. There is a third provision of the contract that reserves to the hospital the right to select the level of discipline it believes is appropriate, which is a third source of power that recommends against... You just left the clause. There's a comma after what you just said. And it then says, but it will make reasonable efforts to utilize progressive discipline. And in your brief, you tell us we should read that as saying, provided it makes reasonable efforts to utilize progressive discipline. So what do we do when the arbitrator says this wasn't progressive discipline? Well, if you look at what the arbitrator found, he did actually note two earlier issues that are somewhat related to the conduct here, including angrily pulling a colleague's ponytail and a profanity-laden outburst. Sure, but he found it progressed too far up the spectrum towards the end point. The issue we take with the arbitrator's imposition of his progressive discipline policy is that that's not an interpretation. If you look at the disciplinary action policy, it does, for Groups 1 and 2, it lists various things where the penalty escalates as the conduct escalates. For Group 3, the parties agree that the only discipline, should they even have committed one of the Group 3 offenses, be that she be terminated. Okay, can I go back to the submission issue? Yes, you can. I suggested, and it's where Judge Torreyes started, I suggested to your brother that it wasn't an essential part of his argument, and he basically agreed. You, however, made it an essential part of your argument, because to rule in your favor, we would have to find that the submission did not, if you will, provide the arbitrator with the authority to decide on an appropriate remedy. And you cite to us a case from Puerto Rico, which I think I looked at and thought was distinguishable, but let's assume we don't have any precedent on this point. Why shouldn't the submission be taken as a subsequent agreement by the parties in the instance of arbitrable disputes that are sent to arbitration, that the arbitrator is empowered to answer both the just cause and the appropriate remedy when the contractual language only talks about a recommended discipline? The first reason for that is, as Your Honor noted earlier, this is a standard submission. When parties submit this issue, they're expecting the arbitrator to read the contract and apply the entire contract, not just the just cause term. I think if you were to take the union's arguments to its logical endpoint, you would see that instead of arbitrations proceeding timely, management would be in court when they have language like here, which is unique, not allowing the arbitrator to substitute his or her judgment of discretion, is relatively unique. It's not rare, and as we note in our brief, there are cases that have looked at it before. Yeah, it's not rare. So if I understand your argument that I'm hearing here, distilled to its essence, you're saying that the contract read as a whole, including the reference to the policies, can only be read as saying that if you commit a Group 3 violation, no one can do anything about the employer discharging you. There are two threads to our argument. One is that under this court's work rules precedent, there was a single penalty for violation of this work rule, which was incorporated into the contract. That's what I just said, right? What, excuse me? When you say this work rule, you're talking about? The Poland Springs, SD Warren, Georgia Pacific line of cases. But you're talking about Group 3 here? Correct, yes. Group 3 work rules, immediate termination. And then you're saying the arbitrator found that, in fact, this was a Group 3 violation. That's correct, Your Honor. But then decided not to give the penalty provided for Group 3. Yes. Well, you have to go beyond that. If I've understood you correctly, you can tell me that when it says the recommended discipline for Group 3, that decision is left entirely to the employer and may not be set aside by the arbitrator because of two other provisions in the contract. And furthermore, that it is not altered by the submission. Have I got it right? That's correct, Your Honor. Okay. And that necessarily leads us to say that the employer's promise that it would be reasonable in gauging progressive discipline, in other words, whether to go along with the recommended disposition in Group 3 is unenforceable. Well, implicit in the union and hospitals agreement to incorporate Group 3 is an agreement that immediate discharge for that penalty is appropriate. Thank you, Your Honor. Thank you.